### Fasano v. Philadelphia Rapid Transit Co., Appellant.

Argued October 27, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Jay B. Leopold,* and with him *Bernard J. O'Connell,* for appellant.

*Harry J. Gerber,* for appellee.

Opinion by Cunningham, J., March 5, 1932:
Plaintiff has a verdict and judgment thereon in the sum of $1,200 for personal injuries resulting from a collision on Coulter Street, Philadelphia, between a

truck, upon which he was riding, and a trolley car of the defendant. Defendant's motions for a new trial and for judgment n. o. v. were denied and it has appealed to this court.

Plaintiff was in the employ of Frank DeAngelo, the operator of a stone quarry at West Manayunk. On a clear day plaintiff and two fellow employes, Tony DeAngelo and Alphonso Saracino, were returning from the quarry on the truck of their employer; DeAngelo was driving and plaintiff, seated at his right, had a full view of traffic conditions. Coulter Street, running east and west, is thirty feet from curb to curb and defendant operates its cars over a single track in the middle of the street; the accident happened in the block between Laurens and Morris Streets; Laurens, a north and south street, intersects Coulter on the north side but does not cross it. Opposite this intersection, Midvale Avenue curves into Coulter from the south and at this point the double tracks of defendant on Midvale merge into the single track on Coulter. A little over three hundred feet east of the point where Midvale enters Coulter the latter crosses, by an overhead bridge, the tracks of the Chestnut Hill Branch of the Pennsylvania Railroad; the next cross street to the east is Morris, about one hundred and seventy feet beyond the bridge. There is a two per cent. descending grade from the bridge to Laurens.

The truck was traveling east on Midvale Avenue and plaintiff testified that when it rounded the curve into Coulter he saw defendant's trolley car about one hundred feet away and coming west on Coulter. Two automobiles, plaintiff said, were parked on the south side of Coulter, and one on the north, within the space then intervening between the trolley car and the truck.

At this point plaintiff's testimony, delivered through an interpreter, becomes uncertain and confused. A portion of his direct examination reads: "Q. What

did the truck driver [DeAngelo] do when he saw the trolley car approaching? A. He stopped, because he could not bring it on the other side. Q. How far away was the trolley car when the truck stopped? A. About 60 feet. ...... Q. How far past the turn [from Midvale into Coulter] had the truck which you were riding on gone before it stopped? A. For about 24 or 25 feet. Q. As you came around the curve did you see the trolley car? A. Yes. I saw it but it was distant. Q. How far was that distance? A. It may have been 100 feet distant. ...... Q. What part of the trolley car hit the truck? A. The left hand side. Q. What part of the truck was hit? A. The truck was struck on the left hand side. We were on the right hand side and the trolley would be on the left side. ...... Q. What happened to the trolley car? A. Left the track. Q. What happened to you as a result of the accident? A. I fell from the truck.''

The most intelligible portions of his cross-examination follow: ''Q. That is what I asked you, where the front of your truck was, with relation to the parked cars on the right, when you first noticed the trolley car. A. It may have been about 60 feet back of this car when I first saw the trolley car. Q. You mean the truck was 60 feet back of the parked automobile when you first saw the trolley car? A. Yes. Q. And at that time the trolley car was 100 feet away from you? A. Yes, it was 100 feet away from me at that time but it was coming very rapidly. Q. You were also moving at that time, your truck was moving? A. The truck had reached the automobile but it could not move to the other side. Q. Let me see if I understand you. You say when you first saw the trolley car your truck was 60 feet behind the first parked automobile on your right hand side, is that right? A. About 60 feet. Q. And at that time where was the trolley car, how far away from your truck? A. When

I saw it it was 60 feet distance. Q. You mean the trolley car was 60 feet away from your truck? A. Yes, but it was going very fast, and the truck had no chance to get out, couldn't back and couldn't get out on the other side.''

When he stated later that the truck had been traveling on the right hand (south) side of the trolley track, he was asked by the trial judge, "Why did you turn into the track?'' and his reply was, "Because these two machines prevented us from going ahead the way we were going.''

Plaintiff neither called the driver of the truck nor accounted in any way for his absence from the stand. His only witness, having knowledge of the accident, was Saracino, the other passenger. He testified he was seated on the front portion of the truck but much lower than the seat and facing toward its left side; that he did not notice anything until the truck stopped on the south side of the track; and that the trolley car was then about seventy-five feet away. When interrogated, on cross-examination, about the automobiles parked on the south side of the track, he answered that he did not notice them until after the accident and then observed that "the back end of the parked automobile was just about even with the front end'' of the truck. This witness, whose testimony was evasive and hesitating, admitted that within two days after its occurrence he had given this version of the accident to a representative of defendant: "Truck was east bound on the south wagon way of Coulter Street, clear of the rails and cars that pass, and was at a point about 75 feet east of east house line of Midvale Avenue, when, on account of parked auto at south curb facing east, truck had to swerve north from south wagon way and at this time I did not see any west-bound Coulter Street car. Truck continued on angle north and when the first left wheel of truck was about

to enter the south rail of Coulter Street track, I then saw a westbound Coulter Street car, coming at a fast speed about twenty feet east of auto truck.''

Upon considering all the testimony in behalf of plaintiff in the light most favorable to him, a majority of the members of this court are of opinion that he failed to produce any evidence from which a jury could properly be permitted to reach the conclusion that defendant's motorman had been guilty of negligence in the operation of its trolley car. That testimony, taken as a whole, shows that as the truck rounded the curve from Midvale Avenue into Coulter it was on the track in the middle of Coulter and was then driven off the track into the south cartway. As the motorman left the bridge over the railroad and proceeded toward Midvale Avenue it was his duty to see the truck coming around the curve, to observe the parked cars on the south side of the street, and to know that the driver of the truck could not pass them without coming upon the track. The only conclusion from all the evidence is that the truck was then approaching upon the south cartway and was clear of the track. Under all the circumstances, and particularly in view of the superior right of defendant to the use of its track and the short distance then intervening between the approaching vehicles, the motorman was justified in assuming that the driver of the truck would use ordinary care and wait behind the parked cars until the trolley car had passed. Instead of doing this, he started to turn into the track almost directly in front of the approaching trolley and the left front of the truck collided with the left front of the trolley car.

The negligence charged in the statement was that defendant's employe operated the trolley car ''at such a reckless rate of speed and without having [it] under proper control'' as to cause the accident. The record will be searched in vain for any competent evidence

130

that the trolley car was operated at an excessive speed under the conditions then existing. Such expressions as were used by plaintiff's witnesses, namely, "very rapidly," "very fast," and "fast speed," are, under all the authorities, too indefinite and general to support a conclusion that the speed was excessive: 2 R. C. L., Sec. 37, p. 1202. Nor was there anything in the testimony for the defendant supplying this lack in plaintiff's case. The motorman testified he had stopped at Morris Street and while going down the slightly descending grade from the bridge was running not more than twenty miles an hour and, as he intended to stop at Laurens Street, had slowed down to fifteen before the accident happened. Under plaintiff's testimony with respect to distances and the point at which the collision occurred, the reasonable inference is that the trolley car was not moving more rapidly than was the truck.

Having concluded that plaintiff failed to show negligence upon the part of defendant's motorman, we need not consider whether the driver of the truck was guilty of contributory negligence and, if so, whether his negligence was imputable to plaintiff under the common purpose or joint enterprise doctrine. Defendant's point for binding instructions should have been affirmed or judgment subsequently entered in its favor notwithstanding the verdict.

Judgment reversed and here entered for defendant.

KELLER J., dissents.